<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

PAUL TIMMENDEQUAS, et al.

       Plaintiffs,

v.

DEVON BROWN, et al.

       Defendants.

Civ. No. 03-1557 (WGB)

**O P I N I O N**

**APPEARANCES:**
Ronald K. Chen, Esq.
**Rutgers Constitutional Litigation Clinic**
123 Washington Street
Newark, NJ 07102

   Counsel for Plaintiffs

Peter C. Harvey, Esq.
**Attorney General of New Jersey**
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, New Jersey 08625

   Counsel for Defendants

**Bassler, Senior District Judge:**

    Plaintiffs brought this suit under 42 U.S.C. § 1983 in the Federal District Court of New Jersey as a class action on behalf of all similarly situated prisoners facing involuntary civil commitment pursuant to the New Jersey Sexually Violent Predator

1

Act, N.J.S.A. § 30:4-27.24 et seq.  Plaintiffs allege in Count Three and Count Four of their Third Amended Complaint that their rights to due process of law under the Fourteenth Amendment were violated because they were denied notice and an opportunity to be heard during the screening and referral process for involuntary civil commitment.

Defendants are individuals, state agencies, and private entities involved in the involuntary civil commitment process.  The Defendants now move to dismiss Counts Three and Four for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1343.  Venue is proper pursuant to 28 U.S.C. § 1391.

For the reasons set forth below, the Defendants' motion to dismiss is **GRANTED**.

**I.  Background**

   **A. Procedural Background**

Plaintiffs Paul Timmendequas, William Whelan, Mickey Vanderpool and Gary Sigman filed suit on behalf of all similarly situated individuals.  The named Plaintiffs represent a class of current and former New Jersey prisoners (collectively referred to as "Plaintiffs") who were convicted of sexual offenses and subject to the screening and referral process for involuntary

civil commitment under the New Jersey Sexually Violent Predator Act (the "Act"), and were at one time or are currently confined to the Adult Diagnostic and Treatment Center ("ADTC"). (Plaintiffs' Brief In Opposition To State Defendants' Motion To Dismiss (hereinafter "Plaintiffs' Brief") at 6.)

Defendants are Devon Brown, Commissioner of the New Jersey Department of Corrections ("DOC"), Richard Cevasco, Director of Psychological Services for the DOC, Thomas Farrell, DOC Medical Services, Grace Rogers, Administrator of the ADTC, and Peter Harvey, Attorney General of New Jersey (collectively referred to as the "Defendants").[1] [2]

Plaintiffs allege in Counts Three and Four of their Third Amended Complaint that Defendants violated their rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 with regard to their civil commitment under the Act.[3]  Plaintiffs seek equitable relief in the form of a Temporary Restraining Order as well as

---

[1] New Jersey Attorney General, Peter Harvey was added as a defendant in Plaintiffs' Third Amended Complaint.

[2] Non-state Defendants Nancy Graffin, Ph.D., Director of Treatment Services, Vivan Shnaidman, M.D., Roger Harris, M.D., Lawrence Siegel, M.D., Diane Schaupp, Ph.D., Correctional Medical Services and Public Safety Concepts have been dismissed from the Complaint.

[3] Plaintiffs' Third Amended Complaint, Third Count, also alleges violations of their First Amendment right "to access to the courts." (Plaintiffs' Third Amended Complaint at 39.)  The Court, however, will not address this issue as neither party raised it in their briefs or during oral argument.

Preliminary and Permanent Injunctions against the Defendants to prevent them from carrying out the screening and referral process mandated by the Act.  Defendants now move to dismiss Counts Three and Four pursuant to Fed. R. Civ. P. 12(b)(6).  The issue before the Court, therefore, is not whether the entire involuntary civil commitment process under the Act provides adequate process but rather whether procedural protections are required at the referral stage.

### B. The Process For Involuntary Civil Commitment Under The New Jersey Sexually Violent Predator Act

The New Jersey Sexually Violent Predator Act, N.J.S.A. 30:4-27.24 et seq., provides for the involuntary civil commitment of an individual deemed to be a sexually violent predator ("SVP").  In passing the Act, the New Jersey Legislature made specific findings regarding SVPs.  N.J.S.A. 30:4-27.25.  The Legislature noted that certain individuals who commit sex offenses suffer from mental abnormalities which make them likely to engage in repeat acts of predatory sexual violence if not treated.  Ibid.  The Legislature deemed it necessary to modify the previous civil commitment framework and additionally separate involuntarily committed SVPs from other persons who have been civilly committed.  Ibid.  The Act defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged

> with a sexually violent offense but found to be incompetent to stand trial, and suffers from mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment. N.J.S.A. 30:4-27.26(b).

When it appears that a person may meet the criteria of a SVP, the "agency with jurisdiction" is mandated to provide notice to the Attorney General ninety days, or as soon as practicable, prior to the anticipated release of a person who has been convicted of a sexually violent offense. N.J.S.A. 30:4-27.27(a)(1). The "agency with jurisdiction" means the agency which releases a person who is serving a sentence or term of confinement. N.J.S.A. 30:4-27.26. The term includes the New Jersey Department of Corrections. Ibid.

Both parties have made reference to a committee within the New Jersey Department of Corrections that makes the initial evaluation of an inmate for referral to the Attorney General. (See Plaintiffs' Third Amended Complaint 25 (hereinafter "Complaint"); Defendant's Motion To Dismiss Counts Three and Four (hereinafter "Defendant's Brief") at 10; 09-15-05 Transcript of Oral Argument at 9, ¶11-12 (hereinafter "Transcript").) The parties have identified this committee as the "Institutional Release Committee", the "Inmate Release Committee", and the "IRC". Id. Neither party, however, cites any legislative mandate within the Act, or elsewhere, describing the makeup or

functional responsibility of this committee.[4]

If the Attorney General determines that public safety warrants the involuntary civil commitment of a SVP, <u>the Attorney General may initiate</u> a court proceeding by presenting to a judge for immediate review the certification of two doctors, one of whom must be a psychiatrist, who have examined the person no more than three days before the petition for commitment. <u>N.J.S.A.</u> 30:4-27.28; 30:4-27.26 (emphasis added); <u>see also</u> <u>In the Matter of the Commitments of M.G. and D.C.</u>, 331 N.J.Super. 365, 373 (2000). Upon receipt of these documents, the court must determine whether there is probable cause to believe that the person is a sexually violent predator. <u>N.J.S.A.</u> 30:4-27.28(f). If the court so finds, it will issue an order setting a date for a final hearing and authorizing temporary commitment to a secure facility designated for the custody, care and treatment of SVPs pending the final hearing. <u>N.J.S.A.</u> 30:4-27.28(f). The final hearing must be conducted within twenty days of the temporary commitment. <u>N.J.S.A.</u> 30:4-27.29(a). At least ten days prior to the final hearing, the SVP and their counsel are to be provided with copies of the clinical certificates and supporting documents, the temporary court order and a statement of the SVP's

---

[4] The Court will only address the "agency with jurisdiction" and charged with referring inmates to the Attorney General as the Department of Corrections and makes no determination as to the conduct of referenced committee.

rights at the court hearing. N.J.S.A. 30:4-27.30(a).  The Act mandates that the SVP shall in no event be released from confinement prior to the final hearing.  N.J.S.A. 30:4-27.28(f).

At the final hearing, the court must find by clear and convincing evidence that the SVP is in need of continued involuntary commitment to issue an order authorizing the involuntary commitment of that person.  N.J.S.A. 30:4-27.32(a). A person subject to involuntary commitment is to be provided counsel at the hearing and is not to be permitted to appear at the hearing without counsel.  N.J.S.A. 30:4-27.29(c).  A psychiatrist on the SVP's treatment team who has conducted a personal examination of the person within five days of the hearing, shall testify at the hearing to the clinical basis for the need for involuntary commitment as a sexually violent predator.  N.J.S.A. 30:4-27.30(b).  Other members of the SVP's treatment team and other witnesses with relevant information, offered by the SVP or the Attorney General, are also permitted to testify at the final hearing.  Ibid.  At the final hearing, a person subject to involuntary commitment as a SVP has the following rights:

>       a. The right to be represented by counsel or,
>          if indigent, by appointed counsel;
>       b. The right to be present at the court
>           hearing unless the court determines that
>           because of the person's conduct at the
>           court hearing the proceeding cannot
>          reasonably continue while the person is
>          present;

      c. The right to present evidence;
      d. The right to cross-examine witnesses; and
      e. The right to a hearing in camera. N.J.S.A. 30:4-27.31.

Those persons committed under the Act receive annual review hearings. N.J.S.A. 30:4-27.35. A SVP may be released from involuntary civil commitment upon recommendation of the Department of Human Services or petition for discharge by the SVP. N.J.S.A. 30:4-27.36.

**II. Discussion**

    **A. Standard for Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal based upon the pleader's "failure to state a claim upon which relief can be granted." Since the long-established federal policy of civil litigation is to decide cases on the proofs, district courts generally disfavor Rule 12(b)(6) motions. Melo-Sonics Corp. v. Cropp, 342 F.2d 856 (3d Cir. 1965); Panek v. Bogucz, 718 F. Supp. 1228, 1229 (D.N.J. 1989).

In considering a Rule 12(b)(6) motion, a court is required to accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. In re Rockefeller Center Prop., Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002) (internal citations omitted). The inquiry is not whether a plaintiff will ultimately prevail in a trial on the merits, but whether the claimant is entitled to offer evidence to support their claims. Scheuer v. Rhodes, 416

U.S. 232, 236 (1974).  Dismissal under Rule 12(b)(6) is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>In re Rockefeller Center Prop., Inc. Sec. Litig.</u>, 311 F.3d at 215-16 (3d Cir. 2002) (internal citations omitted).  "But a court need not credit a complaint's 'bald allegations' or 'legal conclusions' when dismissing a motion to dismiss."  <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997) (noting <u>Leeds v. Meltz</u>, 85 F.3d 51, 53 (2d Cir. 1996), for affirming dismissal of a § 1983 action).

**B. Standard For A Cause Of Action Under § 1983**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

When analyzing a claim for relief under § 1983 for deprivation of procedural due process rights, plaintiffs must allege that (1) the individual interest of which they claim they

9

were deprived is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to them did not provide due process of law. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). "The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." Zinermon v. Burch, 494 U.S. 113, 126 (1990).

**III. Analysis**

**A. Involuntary Commitment Implicates A Liberty Interest**

The Supreme Court and the Third Circuit have recognized that involuntary commitment implicates the liberty interest protected by the Fourteenth Amendment. Addington v. Texas, 441 U.S. 418, 425 (1979); Vitek v. Jones, 445 U.S. 480, 491-92 (1980); Allah v. Seiverling, 229 F.3d 220, 223 n.3 (2000); Leamer v. Fauver, 288 F.3d 532, 544 (3d Cir. (2002); Plain v. Flicker, 645 F.Supp. 898, 906 (1986). The Supreme Court has held that "for the ordinary citizen, commitment to a mental hospital is a massive curtailment

of liberty and in consequence requires due process protection." <u>Vitek</u>, 445 U.S. at 491-92 <u>citing</u> <u>Humphrey v. Cady</u>, 405 U.S. 504, 509 (1972). A State, therefore, must have "a constitutionally adequate purpose for the confinement." <u>O'Connor v. Donaldson</u>, 422 U.S. 563, 574 (1975).

The Court finds that Plaintiffs have sufficiently alleged their liberty interest is encompassed within the Fourteenth Amendment because the focus of their assertions is centered on the process for the involuntary civil commitment to which they were subject. The question now becomes whether the Plaintiffs have adduced a set of facts in support of their averments that the process available to them failed to provide the protections required under the Due Process Clause. The Court finds they have not.

### **B. Procedural Protections**

It is well-established that due process is a flexible standard and "not a technical conception with a fixed content unrelated to time, place and circumstances." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 334 (1976) (internal citations omitted); <u>see also</u> <u>Gilbert v. Homar</u>, 520 U.S. 924, 930 (1997); <u>Reynolds v. Wagner</u>, 128 F.3d 166, 179 (3d Cir. 1997); <u>Tillman v. Lebanon County Correctional Facility</u>, 221 F.3d 410, 421 (3d Cir. 2000). The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

Mathews, 424 U.S. at 333 citing Armstrong v. Manzo, 380 U.S. 545, 552 (1962).  The rub here, of course, is determining when and what is meaningful in the process of involuntary civil commitment.

To determine what process is constitutionally due in a particular case, the Supreme Court has looked to the three-factor analysis enunciated in Mathews v. Eldridge.  Zinermon, 494 U.S. at 127; Gilbert. v. Homar, 520 U.S. 924, 931-32 (1997); see also Alvin, 227 F.3d at 120-21; Graham v. City of Philadelphia, 402 F.3d 139, 145-46 (3d Cir. 2005); Hunter v. Supreme Court of New Jersey, 951 F.Supp. 1161, 1180 (1996).

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Mathews, 424 U.S. at 335.

In analyzing the Mathews factors, the Court is convinced that the Plaintiffs can prove no set of facts that would support their claim that due process protections are required at the referral stage of the involuntary commitment process under the Act.

### 1. Plaintiffs' Interests

The Mathews analysis begins with consideration of the

Plaintiffs' interest. The Plaintiffs' central argument is that the determination to refer a person is "effectively dispositive of [whether that person] will ultimately be committed involuntarily under [the Act]." (Plaintiffs' Brief at 11.) Plaintiffs have an interest in receiving a fair and balanced hearing prior to being committed involuntarily. They have a right to be free from undeserving restraint and an important interest in gaining and maintaining their liberty. The Court, however, concludes that none of these interests are at stake or affected at the preliminary stage of the commitment process.

The Court finds no source even remotely suggesting the Attorney General is beholden to the Department of Correction's referral to seek civil commitment. Plaintiffs argue the mere referral "condemns an inmate to suffer grievous loss... depriv[ation] of their liberty... [and] immediate and irreparable harm...." (Plaintiffs' Brief at 12.) Plaintiffs do not support these claims with caselaw or other evidence. Such a finding would indicate that the Attorney General plays no essential role in the process. It might suggest that screening and act of referring an inmate is the State's initial step toward seeking involuntary commitment. The Court, however, cannot rely on these bald allegations in the face of evidence to the contrary.

The Court disagrees with the Plaintiffs' contentions and notes that while several cases discuss the commitment procedure

13

under the Act, not one tends to show the Attorney General lacks overriding authority to decide whether to seek civil commitment. C.f. Kansas v. Hendricks, 521 U.S. 346, 352-53 (1997) (describing Kansas' involuntary civil commitment process; the New Jersey Act follows the same process of consideration and referral); E.g. Triboletti v. Rogers, et al., No. 02-cv-5911 (D.N.J. Sept. 3, 2005); In re Commitment of W.Z., 173 N.J. 109, 120-22 (2002) (also for describing the Act as "virtually identical" to the Kansas scheme challenged in Kansas v. Hendricks); State v. Bellamy, 178 N.J. 127, 136 (2003); In re Commitments of M.G. and D.C., 331 N.J.Super. 365, 373 (2000); State v. Mumin, 361 N.J.Super. 370, 382 (2003); In re Commitment of P.Z.H., 377 N.J.Super. 458, 463-65 (2005).  Indeed, the Act itself provides that the Attorney General initiates a court proceeding for involuntary commitment.  N.J.S.A. 30:4-27.28(a).  Furthermore, the Plaintiffs' Complaint identifies the role of the DOC as to refer for screening for civil commitment; suggesting that the Attorney General does not accept every referral as tagged for civil commitment.  (Complaint at 23, 27, 34); but see Mumin, 361 N.J.Super at 382.

Based on these considerations alone, the Court finds that providing procedural protections at the referral stage would be premature and perhaps in vain.  The DOC's decision to refer an inmate to the Attorney General is not a "meaningful time;" the

14

DOC is not the State's final, or even central, decisionmaker on seeking involuntary commitment and, therefore, the individual's private interests are not affected at that time. The Attorney General decides whether or not to file a petition for commitment and the Attorney General is not mandated to accede to the DOC's recommendation. In light of this, the Court is not persuaded by the Plaintiffs' uncorroborated allegations and finds that Plaintiffs can prove no set of facts that show an interest is at stake prior to the Attorney General choosing to seek civil commitment under the Act.

### 2. Risk Of Erroneous Deprivation

The second factor under Mathews concerns the risk of erroneous deprivation through the procedures used. The Plaintiffs argue that there is a risk deprivation under the current practice. (Complaint at ¶¶ 81-93.) They offer statistics on recidivism rates to prove Defendants knowingly committed inmates at a greater rate than the national average. (Id. at ¶¶ 84-88.) A single set of statistics, however, is not enough to persuade the Court that there is a high risk of erroneously committing individuals. Applying a general set of statistics on recidivism to the presumed rate at which SVPs are civilly committed is not comparable. A multitude of factors compel each decision to seek commitment and the rate at which those factors are identified in particular individuals may

increase from time to time.  Providing a single study on the national average rate recidivism "for all types of sex offenders" (Id. at ¶ 84) and comparing that to the rate of commitment by the ADTC is not compelling.

The Act provides several layers of protection against an errant referral to the Attorney General.  For instance, the Attorney General may choose not to seek commitment.  N.J.S.A. 30:4-27.28.  On the other hand, if the Court accepts Plaintiffs' contention that the Attorney General rubber-stamps the DOC's recommendation for commitment, a court must still find probable cause for a temporary commitment order and must then set a final hearing to be conducted within twenty days.  Id.  At the final hearing the potential committee is given a full panoply of rights.  See supra at 7-8.

The Plaintiffs also argue that a referral subjects the inmate who is ultimately not committed to the stigmatization of being labeled a SVP; however, they provide no support suggesting such stigma is the result of an absence of protections at the referral stage.  (Complaint at ¶89; Plaintiffs' Brief at 21); but see Smith v. Doe, 538 U.S. 84, 101 (2003) (finding that the psychological impact of Alaska's Sex Offender Registration Act "flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record.").

### 3. The Government's Interest

Finally, the Court considers the Government's interest in maintaining the current system and the burden of providing additional procedures. The Government's interest is in the "isolation, protection, and treatment of a person who may, through no fault of his own, cause harm to others or himself." Jones v. United States, 463 U.S. 354, 377 (1983) (Brennan, J., dissenting). At oral argument, the Defendants explained that allowing an inmate to appear before the referral committee and challenge its decision would create a significant administrative burden and a risk to its partial evaluation. (Transcript at 28-29.) Such a burden would arise from the cost of conducting a hearing and allowing a potential SVP to challenge every accusation against him when no official decision to seek commitment has even been made. Furthermore, allowing a potential SVP to review and challenge every accusation needlessly risks the integrity and the safety of the facility and its workers if those accusations can be challenged at the final hearing.

Allowing a hearing would undermine the Government's strong interest in safeguarding the public welfare as well as maintaining an administratively efficient and fair civil commitment process. The fact that no official decision to seek commitment is made at the referral stage supports the contention that providing procedural protections would greatly enhance the

administrative burden at a time when an inmate's commitment is nowhere near being a foregone conclusion.

## Conclusion

Balancing these factors, the Court finds the Government's interests outweigh those of a potential committee at the referral stage of the involuntary civil commitment process.  The Plaintiffs are not entitled to due process protections at the referral stage because it is not a "meaningful time" in the procedure.  While the process for involuntarily civilly committing an inmate surely implicates a liberty interest, it is not until there is a risk of deprivation of that interest that due process protections are triggered.  There is no risk of deprivation of Plaintiffs' liberty interest at the referral stage of the process; therefore, the Court holds that Plaintiffs are unable to allege any set of facts in support of their claims entitling them to relief.

For the reasons set forth in this Opinion, Defendants' motion to dismiss Counts Three and Four of Plaintiffs' Third Amended Complaint is **GRANTED**.  An appropriate Order follows.

/s/ William G. Bassler
WILLIAM G. BASSLER, U.S.S.D.J.

DATED:    October 14, 2005